(998 P.2d 1141)

No. 80,822

STATE OF KANSAS, *Appellee*, v. JEROME E. LEWIS, *Appellant*.

Opinion filed March 3, 2000.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., RULON and GREEN, JJ.

BRAZIL, C.J.: Jerome Lewis appeals the trial court's denial of his motion to set aside his guilty plea and the presumptive sentence imposed by the court.

Lewis argues that the trial court abused its discretion by refusing to appoint new counsel and that it erred in denying his motion to withdraw his pleas, in imposing a presumptive sentence, and in refusing to consider an unaccepted plea offer as a factor for downward departure. Finally, he contends that his presumptive sentence of 692 months is cruel and unusual punishment.

We find no reversible error and affirm.

Lewis pled guilty and was convicted of one count of rape for having sexual intercourse with a child under 14 years of age. The victim testified that Lewis did not force her to do anything and she never told him her age.

### Refusal to Appoint New Counsel

" 'As a general rule whether the dissatisfaction of an indigent accused with his court-appointed counsel warrants discharge of that counsel and appointment of new counsel is for the trial court, in its discretion, to decide.' " *State v. Ferguson,* 254 Kan. 62, 69, 864 P.2d 693 (1993) (quoting *State v. Banks,* 216 Kan. 390, Syl. ¶ 2, 532 P.2d 1058 [1975]). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson,* 264 Kan. 44, 56, 954 P.2d 702 (1998).

" 'As long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel.' " 254 Kan. at 70. "The lack of cooperation or communication between defendant and trial counsel does not in and of itself constitute a violation of the Sixth Amendment right to counsel." 254 Kan. at 71. "Irreconcilable conflict between a defendant and his attorney may, under certain circumstances, require

the appointment of substitute counsel in order to protect a defendant's Sixth Amendment right to effective assistance of counsel." *State v. Cromwell*, 253 Kan. 495, 500, 856 P.2d 1299 (1993).

In *State v. Saeger*, 13 Kan. App. 2d 723, 779 P.2d 37 (1989), this court adopted the factors an appellate court should consider when determining whether the court abused its discretion in denying a defendant's motion to discharge his or her court appointed attorney as set forth in *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir.), *cert. denied* 487 U.S. 1211 (1988). The factors include the "timeliness of the motion, adequacy of the trial court's inquiry into defendant's complaint, and whether the attorney-client conflict was so great that it resulted in total lack of communication preventing an adequate defense." 13 Kan. App. 2d at 724.

Lewis argues the trial court abused its discretion by denying his request for substitute counsel because a complete breakdown in trust and communication existed between him and his attorney. Lewis contends his requests were timely as he first requested new counsel in December 1996, 7 months before trial. He requested new counsel again in April 1997, and he filed his motion in May 1997, which was still 2 months before trial. He contends these requests could have been granted without any delay or inconvenience to any party. Lewis concedes the court's inquiry into this case was adequate because he was able to tell the judge he had no confidence in his attorney, his attorney was unwilling to fight for him, and he could not stand to be around his attorney. Thus, Lewis concludes he could not receive effective assistance of counsel and the trial court erred in not appointing substitute counsel.

The State argues that although counsel and Lewis disagreed about strategic matters and Lewis did not like him, nothing in the record supports Lewis' claim that these factors prevented him from receiving effective assistance of counsel. The State contends Lewis controlled the course of his case, counsel did everything possible to protect his rights, and counsel was not ineffective in recommending that Lewis enter a plea in light of the strong evidence and lengthy sentence involved. Thus, the State concludes that the court had a reasonable basis for believing the attorney-client relationship

had not deteriorated to the point where counsel could not effectively represent Lewis.

After reviewing this case under the *Saeger* factors, the State's argument is more persuasive. In *Saeger*, this court found Saeger's request for new counsel on the morning of trial to be untimely. 13 Kan. App. 2d at 725. Clearly, the first factor in this case weighs in Lewis' favor because he made oral motions and filed a written motion months before trial.

The second factor contemplates the adequacy of the trial court's inquiry into Lewis' request for substitute counsel. However, Lewis concedes in his brief that the trial court met the second factor by adequately inquiring into his request for substitute counsel.

The final factor under *Saeger* is whether the conflict was so great that there was a total lack of communication which prevents an adequate defense. 13 Kan. App. 2d at 726. Although Lewis contends he did not have sufficient communication with his counsel, the record does not support this contention. Counsel met with Lewis and kept him constantly apprised of what was happening in his case, and he provided Lewis with copies of all documents pertaining to his case. He relayed all plea offers to him. Communication was not lacking between counsel and Lewis simply because they did not agree on defense strategies. Counsel testified he had to change defense strategies as Lewis would change his version of events. Lewis told the court at the plea hearing he had adequate time to discuss this case with his attorney and he was satisfied with the services of his attorney. Thus, the record shows ample communication between Lewis and his attorney to provide an adequate defense.

After weighing the *Saeger* factors, the trial court did not abuse its discretion by refusing to appoint substitute counsel.

### Motion to Withdraw Plea

"A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 1999 Supp. 22-3210(d). The appropriate standard for review is whether the trial court abused its discretion in refusing to allow withdrawal of the guilty plea. *State*

*v. Dighera,* 22 Kan. App. 2d 359, 361, 916 P.2d 68, *rev. denied* 260 Kan. 997 (1996).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson,* 264 Kan. 44, 56, 954 P.2d 702 (1998).

Lewis contends his plea was not knowingly and voluntarily given because he was deprived of effective assistance of counsel when he entered his plea. He argues his attorney did not advise him he could request a continuance when the State's expert changed her testimony at the last minute. Although he does not provide any authoritative Kansas cases, Lewis argues several cases from other jurisdictions hold that "the failure to request a continuance to investigate and prepare a defense, or secure the presence of witnesses, among them expert witnesses constitutes ineffective assistance of counsel."

A two-prong test applies in determining whether to set aside a guilty plea because of ineffective assistance of counsel: (1) Did counsel's performance fall below the standard of reasonableness and (2) is there a reasonable probability that, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial? *State v. Solomon,* 257 Kan. 212, 223, 891 P.2d 407 (1995) (citing *Hill v. Lockhart,* 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 [1985]).

Under the first prong of the test, it must be shown that counsel's performance fell below the standard of reasonableness. 257 Kan. at 223. "Defense counsel has an obligation to advise a defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant." 257 Kan. at 223.

In this case, counsel admits he did not inform Lewis of the possibility of requesting a continuance when the State's expert changed her opinion at the last minute. Counsel testified he and Lewis chose the expert from the K.B.I. rather than hiring their own because the K.B.I. expert's results would be trustworthy. Counsel explained why he did not tell Lewis about the possibility of requesting a continuance:

"I didn't feel a continuance at that point really was necessary. We had already discussed D.N.A., we had discussed testing it. We had discussed using our own expert; we had decided against that. We had discussed submitting it to the K.B.I. We had continued this case several times up to the time of trial for that testing. We had discussed that if the results came back that included him as a donor that it would be detrimental; we had discussed how that would affect his case at trial. This had been discussed many times before."

Although counsel did not discuss the possibility of requesting a continuance, it is likely a continuance would not have helped Lewis' case based on all of the evidence. The trial court at the motion to withdraw hearing criticized counsel for failing to discuss the possibility of obtaining a continuance; however, the court adopted the "totality of the evidence" standard set forth in *U.S. v. Ruth*, 768 F. Supp. 1428, 1430 (D. Kan. 1991), for reviewing the two-prong test. The court found, based on the totality of the evidence, that counsel's performance did not come close to the level of ineffective assistance of counsel. The record clearly indicates that under this standard, counsel did not provide ineffective assistance of counsel.

Also, the second prong requires a reasonable probability that but for counsel's failure to advise Lewis of the possibility of requesting a continuance, Lewis would not have pled guilty and would have insisted on going to trial. See *Solomon*, 257 Kan. at 223. Under the circumstances, it is not likely Lewis would have insisted on going to trial even with the possibility of getting another expert to examine the results.

Lewis and counsel had discussed the choice of experts to conduct the test at length, and they had mutually decided the K.B.I. lab would be the best choice because its results would be trustworthy. They had discussed what his choices would be if the test results were derogatory to his case. Lewis was very emotional after he learned of the results, and he kept saying he should have taken the plea bargain. Lewis understood the gravity of the situation, and it is unlikely he would not have pled at that time if a continuance had been granted for another expert to look at the results because he and his counsel had previously agreed these results were trustworthy. The K.B.I. lab was well respected, and it is unlikely that

another expert would have reached different results. The State had a strong case before the inclusion of the D.N.A. evidence, including a confession by Lewis and an in-court identification of Lewis by the victim. Thus, a reasonable probability does not exist that Lewis would have insisted on going to trial.

Under the two-prong test in *Solomon,* the trial court did not abuse its discretion by denying Lewis' motion to withdraw his plea before sentencing because he knowingly and voluntarily entered his plea and was not influenced by ineffective assistance of counsel.

### *Presumptive Sentence*

Lewis argues his presumptive sentence of 692 months for consensual sex with a 13-year-old girl is cruel and unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

At the time of sentencing, the presumptive range for a severity level 1 nondrug offense with a criminal history of B was 772, 732, and 692 months.

The first issue is whether this court has jurisdiction, because Lewis is appealing from a presumptive sentence. See *State v. Chastain,* 265 Kan. 16, 22, 960 P.2d 756 (1998).

K.S.A. 21-4721 reads, in relevant part,

"(c) On appeal from a judgment or conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review:
(1) Any sentence that is within the presumptive sentence for the crime."

Thus, pursuant to the statute there can be no appeal from a presumptive sentence. The question, however, is whether the court could reach a constitutional challenge to a presumptive sentence. "The right of appeal is entirely a statutory right; no appellate review is required by the United States Constitution, [citation omitted], or the Kansas Constitution, [citation omitted.]" *State v. Ji,* 255 Kan. 101, 102, 872 P.2d 748 (1994). "Where K.S.A. 21-4721 applies, an appellate court's jurisdiction to consider a challenge to a sentence is limited to those grounds authorized by the statute or a claim that the sentence is otherwise illegal." *State v. Ware,* 262 Kan. 180, Syl. ¶ 2, 938 P. 2d 197 (1997). See also *State v. Long,* 26 Kan. App. 2d

644, 656, 993 P.2d 1237 (1999) (no appeal from a claim that presumptive consecutive sentences were cruel and unusual).

"The legislative branch may create courts, and such is not viewed as interfering with the judicial branch of government; but it cannot ordinarily diminish, enlarge, or interfere with the jurisdiction of a court whose jurisdiction is set out in the constitution itself. Conversely, however, Congress and the state legislatures have full power to declare and define the jurisdiction of various courts insofar as it is not declared and defined by the constitution. Subject to constitutional limitations, the legislature has broad power to confer appellate jurisdiction or to take it away. Also, it may grant concurrent jurisdiction to another court." 16A Am. Jur. 2d, Constitutional Law § 287.

"The Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good' " *Lockerty v. Phillips*, 319 U.S. 182, 187, 87 L. Ed 1339, 63 S. Ct. 1019 (1943).

Similarly:

"The Kansas Constitution gives to the district and the appellate courts jurisdiction to hear appeals, such as may be provided by law. The Kansas Constitution gives the legislature the power to grant, limit, and withdraw the appellate jurisdiction to be exercised by the courts." *Gleason v. Samaritan Home*, 260 Kan. 970, Syl. ¶ 5, 926 P.2d 1349 (1996).

Thus, under both the United States and the Kansas Constitutions, absent express constitutional limitations, the legislative branch has the power to limit the jurisdiction of all inferior courts.

The next question then becomes: Can a defendant bring a post-sentence collateral attack on his or her sentence via a claim that it is unconstitutionally cruel and unusual?

K.S.A. 60-1507 reads in relevant part:

"(a) A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released *upon the ground that the sentence was imposed in violation of the constitution* or laws of the United States, *or the constitution* or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, *or is otherwise subject to collateral attack, may at any time move the court which imposed the sentence to vacate, set aside or correct the sentence."* (Emphasis added.)

In Kansas, it has long been the rule that

"where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and *those issues that could have been presented, but were not presented, are deemed waived.* Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding." (Emphasis added.) *State v. Neer*, 247 Kan. 137, 140-41, 795 P.2d 362 (1990).

In this case, even if the issue was raised in the trial court, Lewis was barred by statute from raising the issue of the constitutionality of his sentence on direct appeal. Therefore, because the issue is not one that could have been presented on direct appeal, it necessarily is one whose only chance of review is by collateral attack, *i.e.*, a K.S.A. 60-1507 motion. This is the type of issue that the plain language of K.S.A. 60-1507 will allow.

### Presumptive Sentence and Refusal to Consider an Unaccepted Plea Offer

Lewis next argues that the court erred by not considering a plea offer by the State that Lewis rejected. He concedes that this court does not normally review a sentence within the guidelines.

This court has no jurisdiction to hear an appeal of a presumptive sentence. K.S.A. 21-4721(c). Thus, this court does not have jurisdiction to consider this issue.

Affirmed.