NOT DESIGNATED FOR PUBLICATION

No. 127,950

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM GEORGE HYNECK JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held November 18, 2025. Opinion filed January 30, 2026. Appeal dismissed.

*Hunter Mussetter-Negron* and *Chris Biggs*, of Knopp, Biggs & Renz P.A., of Manhattan, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., HILL, J., and JOAN M. LOWDON, District Judge, assigned.

PER CURIAM: In December 2023, William George Hyneck Jr. pleaded guilty to three counts of sexual exploitation of a child. In March 2024, he filed a motion for border box probation. At sentencing, the district court denied Hyneck's motion and sentenced him to 32 months in prison on each count to be served concurrently in addition to lifetime postrelease supervision. The district court granted Hyneck's request to delay his sentence start date by several weeks to allow him time to get his affairs in order. The State filed a motion to correct illegal sentence challenging the district court's decision to delay

1

Hyneck's sentencing start date while Hyneck filed a motion for rehearing on the district court's decision to deny his request for border box probation. In June 2024, the district court considered the parties' motions. It found that although the issue of Hyneck's sentence start date was now moot, as agreed to by Hyneck, the State was correct in arguing the district court lacked authority to delay service of Hyneck's sentence. The district court also denied Hyneck's motion for rehearing. Hyneck now appeals. We dismiss the appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL HISTORY

In June 2023, the State charged Hyneck with ten counts of sexual exploitation of a child, a severity level 5 person felony. These charges arose after his employer, Kansas State University, flagged his computer for containing pornographic content.

In December 2023, Hyneck pleaded guilty to three of those counts in exchange for the State dismissing the remaining charges. Hyneck's plea indicated that his crimes would be designated as 5-I given his criminal history score. Under the terms of the agreement, the State would ask for a prison sentence while Hyneck was free to request border box probation. Hyneck also waived his right to appeal or collaterally attack his convictions, lawful sentence, or terms of the agreement.

At Hyneck's plea hearing, Hyneck entered his plea. The State provided a factual basis for the charges, with Hyneck's counsel providing some additional facts for the court. The district court accepted the plea, finding that Hyneck had voluntarily, knowingly, understandingly, and intelligently entered the agreement and set the matter over for sentencing.

At sentencing in May 2024, Hyneck called two witnesses to support his request for probation: Seth Wescott and Alaina Rhoad, both licensed, master level psychologists.

2

Wescott testified that the treatment options for sex offenders in prison are not individualized to the needs of each offender. He indicated that he had evaluated Hyneck, at which time Hyneck's counsel admitted a report Wescott wrote regarding this evaluation. Wescott's report recommended that Hyneck receive outpatient treatment delivered by a clinical member of the Association for the Treatment and Prevention of Sexual Abuse, making probation a more ideal sentence for Hyneck's rehabilitation.

On cross-examination, Wescott testified that reports indicated Hyneck possessed over 8,000 sexually explicit images and over 500 videos. Hyneck's counsel did not object to this testimony from Hyneck's witness. Wescott also testified without objection that Hyneck did not express "any remorse for the hundreds of children that had been sexually victimized in these images that he viewed in his home."

Hyneck's second witness, Rhoad, testified that she had engaged in 13 therapy sessions with Hyneck. She further testified that Hyneck was engaged in and amenable to therapeutic treatment.

The State called two witnesses of its own including Kansas State University Police Officer William Bowles and Detective Scott Jacobs. Officer Bowles testified that he was dispatched to investigate Hyneck's laptop after the University had called the police. According to Bowles, he personally reviewed and catalogued over 300 individual files of sexually explicit material. He also testified that his unit served a warrant on Hyneck's residence where they seized multiple devices including thumb drives, disks, VHS tapes, and hard drives which suggested an "evolution of possessing and viewing sexually explicit material of children." Hyneck's counsel did not object to the veracity of this information. On cross-examination, Officer Bowles affirmed Hyneck had collected the files over a period of time but did not know the date of last use for any of the files.

Detective Jacobs testified that Heart of America Regional Computer Forensics Laboratory (HARCFL) analyzed Hyneck's computer and other media storage devices. Hyneck's counsel objected to a question asking Detective Jacobs to testify to the number of images found in the report, arguing that such testimony was hearsay. The district court sustained the objection.

The State then asked Detective Jacobs about his personal review of the devices analyzed by HARCFL. Detective Jacobs testified that upon his own independent review, Hyneck possessed over 8,000 images and 500 videos of sexually explicit content. Finally, Detective Jacobs testified, without objection, that police had seized hundreds of different storage devices that contained sexually explicit images of children from Hyneck's home suggesting that Hyneck's collection "spanned years." On cross-examination, Detective Jacobs indicated that he did not conduct any analysis to determine when Hyneck had last downloaded or viewed any of the child pornography in his possession.

The district court then considered parties' arguments regarding disposition. The State maintained that given the unknown effectiveness of treatment, the nature of the crime and its impact on children, and the number of files and various mediums on which they were stored all supported imposition of the presumptive prison sentence. The State further noted that Hyneck continued to refuse any responsibility for his crimes or acknowledge that his actions were for sexual gratification while contradictorily asking the district court to find that he was a suitable candidate for treatment and rehabilitation.

Hyneck's counsel pointed to his lack of criminal history and willingness to engage in therapy when asking the district court to impose probation. He asserted that because Hyneck had not manufactured or distributed child pornography, he was more amenable to therapy and should be granted border box probation.

4

After recounting the discretion afforded to it when considering requests for border box probation, the district court weighed various factors for sentencing including recidivism, rehabilitation, deterrence, and retribution. The district court then acknowledged that the first requirement for granting probation was satisfied and that an effective treatment program for Hyneck both existed and was available. But then the district court noted it was not persuaded that such a program would be more effective than the presumptive prison term.

The district court therefore declined to grant Hyneck's motion for border box probation, sentencing him to 32 months on each count to be served concurrently in addition to lifetime postrelease supervision along with costs and fees.

Hyneck's counsel then asked the district court to delay the start date for Hyneck's sentence to give him time to get his affairs in order. The State objected, but the district court granted Hyneck's request, allowing him two weeks before reporting to jail to begin his sentence.

After sentencing, the State filed a motion to correct illegal sentence, challenging the district court's delay of Hyneck's sentence start date under K.S.A. 21-6604. Several days after the State's filing, Hyneck filed a motion for rehearing on his sentence, alleging for the first time that the district court considered false evidence from the State when denying Hyneck's request for border box probation.

At the motion for rehearing, the district court first considered the State's motion to correct illegal sentence. The State stood on its motion while Hyneck's counsel conceded that because Hyneck was already in custody, the issue was moot. The district court agreed that the issue was moot as to Hyneck's case but noted that "the law directed me to do otherwise than what I did in this case" and that the "State correctly sets forth the law" regarding a district court's ability to delay a sentence start date.

The district court then considered arguments regarding Hyneck's motion for rehearing, specifically urging Hyneck's counsel to provide legal authority to support its assertion that a district court could grant a rehearing. Hyneck's counsel argued that he had objected at sentencing to information in the HARCFL report as hearsay. He also acknowledged that he did not object again because he did not see it as "necessary."

Hyneck's counsel argued that Detective Jacobs' inaccurate references to the HARCFL report left the district court with the impression that Hyneck had been looking at child pornography for a long period of time. Without citing to any legal authority, Hyneck's counsel advised the district court that "whenever the Court has a question about the evidence being presented, particularly if there's an allegation that's just not true," then the district court may grant a rehearing. He further indicated that regardless of the district court's ruling on the motion, the motion for rehearing was intended to preserve the record for appeal.

Hyneck's counsel attempted to admit Detective Jacobs' initial report to the district court with a proffer to establish for the record what took place at the sentencing hearing and whether Detective Jacobs misrepresented evidence. The State objected to this proffer and clarified Hyneck's counsel's allegations that Detective Jacobs had misled the district court with his testimony regarding the number of child pornography files in Hyneck's possession. It noted that although only 227 files could be tied back to a specific child or offender, there were in fact over 8,000 images of suspected child pornography on various mediums in Hyneck's possession.

The district court found that Hyneck's counsel had not laid a proper foundation to admit the report. The State then argued that the district court should deny Hyneck's motion for rehearing, noting there was no reason for the district court to conduct a rehearing if Hyneck's ultimate goal was not a modified sentence, which the State noted the district court did not have authority to provide.

Ultimately, the district court opted to deny Hyneck's motion for rehearing, noting it was "not aware of legal authority to grant the motion for rehearing" nor did Hyneck's counsel provide "any legal authority within the motion itself" that would allow the district court the ability to grant the motion. The district court credited the State's acknowledgment that any reference to sexually explicit images on VHS tapes was in error but found that a separate report verified Detective Jacobs' testimony that Hyneck's computer contained a large number of sexually explicit images and GIFs.

The district court informed the parties that irrespective of any potentially false evidence admitted at Hyneck's sentencing, it felt "the presumption of imprisonment was merited and satisfied." The district court further noted that any potential effect the evidence might have had on the sentence was "probably akin to harmless error, in a sense." The district court acknowledged that the evidence could have had an impact but "it didn't have enough effect or requisite effect to change what the Court was ordering at the time of sentencing." The district court also denied a request from Hyneck for an appeal bond.

Hyneck timely appealed.

DISCUSSION

Hyneck raises several arguments before this court. First, he argues this court may consider his appeal under both Kansas statute as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Second, Hyneck contends that the district court abused its discretion by denying his motion for border box probation given that the State admitted false evidence at his sentencing hearing. Third, he maintains the district court also abused its discretion by denying his motion for rehearing, again, alleging the court relied on false evidence admitted by the State. Lastly, despite conceding to the district court that the matter was moot, Hyneck asserts that this court

7

should find that the district court had proper authority to set his sentencing start date. He asks this court to reverse and remand his case for resentencing.

The State asserts that this court does not have jurisdiction to consider Hyneck's appeal given that he appeals a presumptive sentence ordered under a lawful plea agreement. The State notes that Hyneck expressly waived his right to appeal a lawful sentence and furthermore, that the district court explicitly denied that the evidentiary errors that Hyneck alleged played any role in his sentence. The State maintains that because this court's jurisdiction as well as Hyneck's right to appeal is statutory, he cannot rely on alleged violations of constitutional due process to create an avenue for this court to consider his claims. As such, it asks this court to dismiss Hyneck's appeal.

Alternatively, the State asks this court to hold that Hyneck did not properly preserve his abuse of discretion arguments and to the extent that he did, the district court did not err by denying his motion for border box probation or motion for rehearing. Furthermore, the State claims that the question of whether the district court could set Hyneck's sentencing start date is moot given that Hyneck is already in custody.

*Because the district court imposed a presumptive prison sentence, this court lacks jurisdiction to consider Hyneck's appeal.*

Because this appeal stems from a presumptive prison sentence imposed under a lawful plea agreement, this court must first evaluate the State's claim that there is no appellate jurisdiction to consider Hyneck's arguments.

*Standard of Review*

Whether this court may exercise jurisdiction over an appeal is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883

8

(2022), *abrogated on other grounds by State v. Barnes*, 320 Kan. 147, Syl. ¶ 3, 563 P.3d 1255 (2025) (venue is not a jurisdictional matter, but a procedural one).

*Analysis*

Hyneck fell into a border box category for sentencing purposes. Pursuant to K.S.A. 2021 Supp. 21-6804(f) and (q), the presumptive punishment is a term of imprisonment, but the court may impose an optional nonprison sentence as otherwise provided by K.S.A. 2021 Supp. 21-6804(q).

When a district court imposes a sentence that is within the presumptive sentence for that crime, this court generally lacks jurisdiction to consider the sentence on appeal. K.S.A. 21-6820(c); see *State v. Young*, 313 Kan. 724, 730-31, 490 P.3d 1183 (2021) (explaining presumptive sentences and affirming that appellate courts lack jurisdiction to review one); *State v. Rizo*, 304 Kan. 974, 984-85, 377 P.3d 419 (2016) (appellate court does not have jurisdiction to review district court's denial of motion to depart from presumptive sentence under the revised Kansas Sentencing Guidelines Act). Further, when a defendant's sentence is the result of a lawful plea agreement, any knowing and voluntary waiver by a defendant of their statutory right to appeal is generally enforceable. *State v. Patton*, 287 Kan. 200, 226, 195 P.3d 753 (2008).

Appellate courts may review even a presumptive sentence, however, if some aspect of the sentence is illegal under another sentencing statute or the sentence is ambiguous regarding the time or manner of service. *State v. McMillan*, 319 Kan. 239, 246, 553 P.3d 296 (2024); see *State v. Steinert*, 317 Kan. 342, 355-56, 529 P.3d 778 (2023) (remanding sentencing appeal to district court to determine whether presumptive sentence was illegal regarding criminal history score).

9

Hyneck acknowledges that Kansas law generally bars a defendant from appealing a presumptive sentence stemming from a plea agreement. Yet he argues that the district court erred by imposing his sentence because the State presented false evidence at his sentencing hearing. He contends that several statutory provisions make exceptions that would, when construed in his favor, allow this court to maintain jurisdiction over his case. He further asserts that even if this court does not have statutory authority to hear his appeal, it should consider his due process claim given the State's presentation of false evidence at his sentencing hearing.

We first consider Hyneck's statutory arguments. He first argues this court maintains jurisdiction over his appeal under K.S.A. 21-6820(e)(1). This provision allows an appellate court to review a claim that a departure sentence "resulted from partiality, prejudice, oppression or corrupt motive." K.S.A. 21-6820(e)(1). Hyneck's sentence was not the result of a departure, however. Thus, subsection (e)(1) does not apply.

In addition to his argument under K.S.A. 21-6820(e)(1), Hyneck also cites to subsection (f) to argue that this court may reverse the district court's sentence "'[i]f the appellate court concludes that the trial court's factual findings are not supported by evidence in the record *or* do not establish substantial and compelling reasons for [a] departure.'" Hyneck argues that the conjunctive use of "or" evinces an intent by the Legislature to allow this court to review the district court's sentence if either its factual findings are not supported by evidence in the record or if the factual findings do not establish a substantial or compelling reason for a departure. He further claims that any ambiguity in the statute must be resolved in his favor as the defendant.

But Hyneck's argument regarding subsection (f) is not consistent with a reading of the statute as a whole. When considering this subsection *in pari materia* with the remaining provisions, it is clear that subsection (f) concerns an appellate court's options for considering a sentence that results from a departure.

Regardless of the conjunction used to join the phrases in subsection (f), the entirety of the provision references appellate review of a district court's "findings." K.S.A. 21-6820(f). A district court makes no findings, nor is it required to, if a defendant's crime(s) of conviction carry a presumptive prison sentence. Findings are only required if a district court imposes a departure sentence or nonprison sanction. K.S.A. 21-6820(d). In fact, subsection (f) merely affords appellate courts the ability to review departure sentences imposed in accordance with subsection (d); hence, the repeated reference to "evidence in the record" and "substantial and compelling reasons" for a departure. K.S.A. 21-6820(d), (f).

Practically speaking, Hyneck also does not point to what "factual findings" the district court made to which subsection (f) could apply for his appeal. Instead, he presumably asks this court to infer that the district court's imposition of the presumptive prison term in his case was predicated on a finding influenced by "false evidence" and furthermore, that this false evidence was not "in the record."

For these reasons, his rule of lenity argument also fails. The rule of lenity requires a court to adopt a statutory interpretation most favorable to a criminal defendant if there are "'two reasonable and sensible interpretations'" of the statute. *State v. Collins*, 303 Kan. 472, 476, 362 P.3d 1098 (2015) (quoting *State v. Reese*, 300 Kan. 650, 658, 333 P.3d 149 [2014]). Here, Hyneck does not argue a reasonable and sensible interpretation of either K.S.A. 21-6820(e)(1) or (f). Instead, his proposed constructions would contradict the plain meaning of the statute by applying it to presumptive sentences that the Legislature clearly excluded from appellate review. See *Collins*, 303 Kan. at 476.

We next consider Hyneck's due process argument. He maintains that the introduction of false evidence by the State at his sentencing hearing denied him an effective opportunity to rebut the State's allegations thereby having an effect on his sentence. But Hyneck chooses to ignore that it was his witness who first testified that

reports indicated Hyneck possessed over 8,000 sexually explicit images and over 500 videos. And Hyneck also chooses to ignore that there is a clear distinction made between 8000 sexually explicit images and 500 videos on Hyneck's "devices" and the 207 graphic files and 20 video files that "matched hash values for known images and videos containing child pornography."

Hyneck points out that of the various types of mediums and devices recovered from his possession, including VHS, thumb drives, and disks, there were no sexually explicit images or videos on the VHS tapes. Yet, the State already conceded this matter to the district court and does so again in its brief. It is hard to view this concession as "false evidence."

Regardless of the discussion above, appellate courts in Kansas have routinely held that individual constitutional challenges to a presumptive sentence may not be considered on direct appeal. See, e.g., *State v. Huerta*, 291 Kan. 831, Syl. ¶ 3, 247 P.3d 1043 (2011); *State v. Clemons*, 273 Kan. 328, 343-44, 45 P.3d 384 (2002); *State v. Mitchell*, 45 Kan. App. 2d 592, 605, 252 P.3d 586 (2011); *State v. Lewis*, 27 Kan. App. 2d 134, 140-42, 998 P.2d 1141 (2000).

Hyneck has failed to demonstrate an exception to the general rule that this court may not consider an appeal for a presumptive sentence.

*Conclusion*

This court lacks statutory authority to consider Hyneck's appeal of his presumptive sentence. This appeal is dismissed for lack of jurisdiction.

Appeal dismissed.