(28 P.3d 440)
No. 84,930

STATE OF KANSAS, *Appellee*, v. ANTHONY C. BLACKSHIRE, *Appellant*.

Opinion filed July 27, 2001.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Richard A. Olhmstead* and *Elizabeth Reimer*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before RULON, C.J., LEWIS, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: Anthony C. Blackshire appeals his convictions for two counts of rape and five counts of aggravated indecent liberties with

a child. Blackshire is currently serving a 325-month sentence in the custody of the Secretary of Corrections. He argues that the trial court should not have held the hearing to determine the voluntariness of his confessions simultaneously with his trial, that the sentencing court adopted a procedure that prevented it from considering his mitigating evidence, that his sentence is unconstitutionally excessive, and that the trial court erroneously instructed the jury to "work out justice for the parties." We affirm.

On February 9, 2000, Blackshire, who was charged with multiple counts of rape and aggravated indecent liberties, was convicted on seven counts and acquitted on one. All five victims, A.W., A.C., C.A., H.C., and D.T., were too young to consent to sexual intercourse or lewd fondling and touching. A brief review of Blackshire's charges, evidence, and sentences is helpful in deciding the issues raised in this appeal.

Blackshire was charged in counts I and II with raping A.W. in February 1997. She was 13 and Blackshire was 17 years old at the time of the intercourse. A.W. did not testify at trial; however, Blackshire had admitted to the police that he had consensual sexual intercourse with A.W. on two occasions.

The jury convicted Blackshire on both counts. At sentencing, the court designated count I as the primary offense. Blackshire's sentencing guidelines category and criminal history level were 1-E, and he was sentenced to a guidelines term of imprisonment of 276 months. For count II, he was sentenced to a concurrent 206-month term. The sentencing court used criminal history category I to classify all of his nonbase sentences.

In count III, Blackshire was charged with aggravated indecent liberties with a minor based on an incident of lewd fondling in July 1997 involving A.C. She was 15 and Blackshire was 17 at the time. A.C. testified at trial about the incident, and Blackshire had confessed to the police that the incident occurred but was consensual. Blackshire was convicted. He was sentenced to a guidelines term of 49 months for this crime, concurrent with the sentence for count I.

Blackshire was charged in count IV with raping C.A. C.A., who was 13 at the time, testified that their sexual intercourse was con-

sensual. Blackshire denied having sex with her. On this count he had not confessed to the police and was acquitted.

Counts V, VI, and VII charged Blackshire with three counts of aggravated indecent liberties involving H.C. These incidents occurred May 20 through May 27, 1999, when H.C. was 15 and Blackshire was 19. H.C. testified about the incidents, and Blackshire confessed and indicated their conduct was consensual. The jury convicted him. For these crimes, Blackshire received three 49-month terms, concurrent with each other and concurrent with count I.

Finally, in count VIII, Blackshire was charged and convicted of aggravated indecent liberties with D.T. This charge was based upon allegations of lewd fondling or touching on May 27, 1999. At the time of the alleged touching, D.T. was 11 and Blackshire was 19. Blackshire confessed to a certain amount of this conduct. The jury found him guilty. For this offense, he was sentenced to 49 months, but the sentencing court ordered this sentence to be served consecutive to count I, thus creating an aggregate sentence of 325 months.

During the course of their investigation, the police interviewed Blackshire. After being advised of his *Miranda* rights, he made several inculpatory statements. Because Blackshire raised the issue about the voluntariness of his statements, the court held a *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), hearing. For the sake of expediency, the court decided to hold the hearing during the course of the trial itself.

On July 1, 1999, K.S.A. 21-3522 went into effect. That statute is popularly known as the "Romeo and Juliet law" and it defines the crime of unlawful, voluntary sexual relations. All of the crimes committed by Blackshire occurred prior to the effective date of the Romeo and Juliet enactment.

The trial court gave the following instruction without objection from the State or the defendant:

"A juror is an officer of the Court, and it is the duty of the jury to work out justice for the parties within the law and the evidence. You must do this without being influenced by likes, dislikes, sympathy or prejudice.

"In your deliberations, you should lay aside mere pride of opinion, and should bear in mind that the jury room is no place for adopting or maintaining support for either side of the case. The aim to be kept in view by the jury is, the truth as you find it to be from the evidence, considered with the instructions of the Court.

"It is the duty of the jury to consider the evidence and the instructions together, and to listen to the arguments of each other with an open mindedness and a disposition to be convinced by them. If at any time such consideration of the evidence and the instructions, a juror is convinced that his or her vote is wrong, it then becomes the duty of such juror to change his or her vote."

### *Jackson v. Denno* Hearing

Blackshire filed a motion in limine precluding the State from introducing his confessions unless "the statements are produced prior to trial and the Court, pursuant to [the statutes] and *Jackson v. Denno*, 378 U.S. 368 (1964), finds them to be voluntary, with a knowing and intelligent waiver of his constitutional rights." At the hearing on the pretrial motions, the trial court heard argument on the motion in limine and ruled that it would hold a *Jackson v. Denno* hearing during the trial. The State agreed and the defense counsel did not object. The trial court, elaborating on the procedure, ruled that instead of having a separate hearing on Monday and not having a jury, it would conduct the hearing simultaneously with the trial. Again, the State agreed and the defense counsel did not object. All remaining matters in the motion in limine were ultimately granted by the court.

During its case, the State called Detective Jackson to testify about his investigation. The officer indicated that he interviewed Blackshire, and the prosecutor asked several questions about the voluntariness of Blackshire's statements and his waiver of constitutional rights. Defense counsel did not object to any of those questions.

While the police officer was giving the details of the confessions, the defense counsel objected twice on hearsay grounds. The next day of trial, outside the jury's presence, the trial court ruled: "Yesterday afternoon, during Detective Jackson's testimony, we were also having a *Jackson v. Denno* hearing, and I find that Mr. Blackshire's statements were made freely, voluntarily and understandably." Defense counsel did not object. The court then asked if any-

thing else needed to go on the record, and defense counsel was silent.

Two other officers testified at trial about their interviews with Blackshire. Questions concerning the voluntariness of his statements and his demeanor during the interviews were answered without objection. Defense counsel cross-examined both witnesses. At the close of the State's case, again outside the presence of the jury, the prosecutor asked the court to make a *Jackson v. Denno* finding on the record. Defense counsel did not object to either the request or the trial court's findings that the statements to both officers were "freely and voluntarily made." Defense counsel did take the opportunity to place another unrelated issue on the record.

On appeal, Blackshire does not challenge the findings of the trial court concerning the voluntariness of his confessions. Rather, he claims that the trial court's method of conducting the *Jackson v. Denno* proceeding simultaneously with his jury trial violated his right to procedural due process.

Despite the obvious fact that the better procedure would be to hold a separate hearing to determine the voluntariness of the confessions (had the trial court found the statements involuntary, a mistrial would have resulted since the jury would have already heard the statements), we do not think that this issue is properly before this court. Since there was no contemporaneous objection to the procedure adopted by the trial court of holding the *Jackson v. Denno* hearing simultaneously with the trial, this issue has not been properly preserved for appellate review. See *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Previously, in a case similar to Blackshire's, our Supreme Court reaffirmed the rule that the record must show a timely and specific objection in order to preserve or raise the admissibility of evidence as an issue on appeal. The court in *State v. Bornholdt*, 261 Kan. 644, 651, 932 P.2d 964 (1997), was asked to review whether the trial court committed reversible error when it admitted the defendant's statements to officers without holding a voluntariness hearing. As in Blackshire's case, there was no objection at trial. The *Bornholdt* court stated: "If this were not a case where a hard 40

sentence had been imposed, this issue would fail because of our rule that in order to raise the admissibility of evidence as an issue on appeal, the record must show a timely and specific objection. [Citations omitted.]" 261 Kan. at 651.

The only reason the *Bornholdt* court reviewed the matter was due to the legislative mandate in K.S.A. 21-4627 requiring review of all hard 40 sentence cases. Blackshire's case does not fit within that legislative mandate. The issue is not properly before us.

## Romeo and Juliet Enactment as Mitigation

Turning to the next issue raised by Blackshire, his counsel contends that Blackshire was not given a proper hearing on his motion for a downward departure when the sentencing court "refused to consider relevant evidence" in support of his request. We believe that this argument is nothing more than a careful attempt to avoid K.S.A. 21-4721, which bars review of a presumptive guidelines sentence. The sentences imposed on Blackshire are within the presumptive ranges provided by law, and we lack jurisdiction to review them.

Even so, our Supreme Court has held that "the legislature would appear to have implicitly allowed a defendant to appeal from the procedurally inadequate denial of a motion for departure." *State v. Koehn*, 266 Kan. 10, 14, 966 P.2d 63 (1998). The "procedural defect" Blackshire complains about is the fact that the sentencing court ruled as a matter of law that the Romeo and Juliet statute was not a basis for departure. Potentially, K.S.A. 2000 Supp. 21-3522 would have covered Blackshire's crimes involving H.C. and A.C. had he committed his offenses after July 1, 1999. The statute lowered the severity level of consensual sexual relations between opposite sex teens as young as 14 meeting certain criteria. Blackshire claims the court's ruling equates to a failure to consider relevant evidence.

During the hearing on the downward departure motion, the sentencing court asked Blackshire if he had any evidence to present in mitigation. Blackshire responded, "No." The court concluded as a matter of law that the issue raised in the departure motion was not a basis for departing. By ruling that a subsequent enactment

of the legislature reducing the penalties for some conduct is an insufficient reason to depart from a guidelines sentence, the trial court did not adopt a "procedure" that prevented the defendant from presenting his mitigation argument. It appears to us that the court considered Blackshire's mitigation argument, was unmoved, and denied it. We see no procedural defect that creates a need for a new sentencing hearing.

## Cruel and Unusual Punishment

Blackshire challenges his sentences for counts I and II. He argues that his presumptive sentences of 276 months and 206 months for consensual sex with a 13-year-old girl is cruel and unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Bill of Rights of the Kansas Constitution. At sentencing, neither the State nor the defendant disputed the severity levels of any of the convictions, nor did they dispute Blackshire's criminal history. Blackshire received guidelines sentences.

We believe that this court lacks jurisdiction to review this matter because of K.S.A. 21-4721. Another panel of this court in *State v. Lewis*, 27 Kan. App. 2d 134, Syl. ¶ 6, 998 P.2d 1141, *rev. denied* 269 Kan. 938 (2000), held that the challenge that a presumptive guidelines sentence is cruel and unusual is statutorily barred from review on direct appeal but can be raised in a collateral attack under K.S.A. 60-1507. Pursuant to K.S.A. 21-4721, "there can be no appeal from a presumptive sentence." 27 Kan. App. 2d at 140. We find that reasoning persuasive. We cannot review whether Blackshire's sentence is cruel and unusual punishment, for to do so would nullify the statute barring appeals of presumptive guidelines sentences.

## *Allen* Instruction

Finally, Blackshire contends that the trial court erred when it gave a non-PIK, *Allen* type instruction. See *Allen v. United States*, 164 U.S. 492, 501-02, 41 L. Ed. 528, 17 S. Ct. 154 (1896). Blackshire admits that defense counsel failed to object to the instruction. He cannot seek appellate review now unless the instruction was clearly wrong.

Our rule is clear:

"[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

See *State v. Humphery*, 267 Kan. 45, 62, 978 P.2d 264 (1999).

Besides, similar instructions have been upheld in *State v. Dias*, 263 Kan. 331, 334-35, 949 P.2d 1093 (1997); *State v. Whitaker*, 255 Kan. 118, 872 P.2d 278 (1994); and *State v. Giles*, 27 Kan. App. 2d 340, 4 P.3d 630, *rev. denied* 269 Kan. 936 (2000). We find no real possibility that the jury in this case would have rendered a different verdict if the instruction had not been given.

Affirmed.