NOT DESIGNATED FOR PUBLICATION

No. 113,229

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAQUANTRIUS S. JOHNSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed February 26, 2016. Affirmed and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

*Per Curiam*: After Daquantrius S. Johnson waived his right to a jury trial, the district court found him guilty of failing to register under the Kansas Offender Registration Act (KORA) and sentenced him in accordance with his criminal history score.

Johnson appeals based on two grounds. First, he contends that the district court did not properly advise him of his right to a jury trial and so he could not knowingly and voluntarily waive it. Second, he argues that imprisoning someone for up to 46 months for

1

failing to comply with registration requirements is categorically cruel and/or unusual punishment. Because we find no errors, the conviction and sentence are affirmed. However, we remand for correction of an error in the sentencing journal entry.

FACTS

Johnson was required to register as an offender under KORA because of a 2012 juvenile adjudication. Although Johnson initially registered properly, in November 2013 he failed to report and register as required. A sheriff's investigator was unable to locate or contact Johnson to bring him into compliance.

In January 2014, Johnson was arrested on another case and was then charged with failure to report and register as required under KORA. See K.S.A. 2015 Supp. 22-4901 *et seq.* Under K.S.A. 2015 Supp. 22-4903, the first conviction for violating the requirements in KORA is a severity level 6, person felony.

In late October 2014, the day before his jury trial was to start, Johnson waived his right to a jury trial. At the bench trial, the State contended that Johnson deliberately chose not to register to avoid being arrested on a warrant for violating probation. Ultimately, the district court found Johnson guilty.

At sentencing in December 2014, the district court determined that Johnson had a criminal history score of A—the highest score. See K.S.A. 2015 Supp. 21-6804. The district court sentenced Johnson to 46 months' imprisonment and 24 months' postrelease supervision.

Johnson now appeals to this court.

2

Johnson first argues that his conviction must be reversed because the district court failed to properly advise him of his right to a jury trial before accepting his waiver. The State counters that Johnson's claim should not be considered for the first time on appeal and, in the alternative, that Johnson knowingly and voluntarily waived his right.

As a preliminary matter, we must consider whether Johnson's claim is properly before us. As a general rule, issues, even constitutional ones, not raised before the trial court cannot be raised on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Johnson asserts one of the exceptions to the general rule applies because consideration of the issue is necessary to prevent the denial of fundamental rights. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). As Johnson contends, Kansas courts have recognized the right to a jury trial as a fundamental right. See, *e.g.*, *State v. Frye*, 294 Kan. 364, 368-70, 277 P.3d 1091 (2012); *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). Despite the State's contention to the contrary, Johnson properly invokes and argues an exception to the general rule that issues may not be raised for the first time on appeal as required under Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41). See *Godfrey*, 301 Kan. at 1043-44. Because the right to a jury trial is a fundamental right, this court may consider the issue even though it was first raised on appeal.

Whether a defendant has waived the right to a jury trial is a factual question, which this court reviews for substantial competent evidence. But when the facts are undisputed, whether the defendant knowingly and voluntarily waived his or her right is a legal question subject to unlimited review. *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012).

A criminal defendant's right to a jury trial is guaranteed by both the United States and Kansas Constitutions. U.S. Const. amend. VI; Kan. Const. Bill of Rights, §§ 5, 10. In Kansas, defendants charged with felonies also have a statutory right to a jury trial. K.S.A. 22-3403. Because the State charged Johnson with a felony punishable by imprisonment of up to 46 months, he had both a constitutional and statutory right to a jury trial.

A defendant may waive his or her right to a jury trial, but "'the defendant must first be advised by the court of [the] right to a jury trial, and he [or she] must personally waive this right in writing or in open court for the record.'" *State v. Lewis*, 301 Kan. 349, 377, 344 P.3d 928 (2015) (quoting *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 [1975]). By statute, the defendant, the State, and the district court must all agree to the waiver. K.S.A. 22-3403(1). In determining whether a waiver is valid, the court considers "whether it was voluntarily made by a defendant who knew and understood what he or she was doing" based on the particular facts and circumstances of the case. *Beaman*, 295 Kan. at 858. But waivers are strictly construed to ensure the defendant has every chance to receive a jury trial. 295 Kan. at 858 (citing *Irving*, 216 Kan. at 589).

At the jury waiver hearing, the following exchange occurred:

"THE COURT: This case is one where Mr. Johnson is charged with an . . . offender registration violation. It is scheduled for trial. . . . I understand the parties have informally come to an understanding that Mr. Johnson will waive his right to a jury trial and we'll proceed to a bench trial on Friday, which would be the 31st. Is that correct?
. . . .
"THE COURT: All right. Mr. Johnson, if you'd please stand. You've discussed this waiver with [your attorney]?
"THE DEFENDANT: Yes, sir.
"THE COURT: And you understand if you waive your right to a jury trial it's a binding waiver. You don't get to change your mind about it. It's going to be a bench trial without a jury. You understand that?
"THE DEFENDANT: Yes, sir.

4

"THE COURT: All right. And it is your decision and you're the one making the decision to waive; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Let the record reflect then that Mr. Johnson has waived his right to a jury trial in 14 CR 45. We will proceed to trial then with a bench trial on Friday, October 31st, beginning at ten o'clock AM."

Johnson contends that this waiver was ineffective because the district court failed to fully explain the nature and extent of the right to a jury trial or the meaning and effect of a "bench trial." The State counters that the record demonstrates that the district court properly advised Johnson of his right to a jury trial and so the waiver was knowing and voluntary.

In support of his position, Johnson cites two unpublished opinions: *State v. Cervantes-Cano*, No. 107,179, 2013 WL 1943060 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1204 (2013), and *State v. Harris*, No. 110,228, 2014 WL 6909612 (Kan. App. 2014) (unpublished opinion). In particular, he focuses on the similarities between the dialogue between the defendant and district court in *Cervantes-Cano* and the dialogue in his case.

In *Cervantes-Cano*, the defendant did not speak English and communicated with the district court through an interpreter. The district court judge said to Cervantes-Cano, "'[Y]our attorney has advised me that you wish to waive your right to a trial by jury; is that right?'" Through the interpreter, Cervantes-Cano responded, "'Yes.'" The judge went on to say, "'You want to try the case to the Court and you are waiving your right to a speedy trial; is that correct?'" Again Cervantes-Cano responded, "'Yes.'" 2016 WL 1943060, at *3. The judge then questioned Cervantes-Cano about whether anyone had threatened him and if he had made the decision himself. Satisfied with the answers, the judge then accepted the waiver. A panel of this court determined this was an ineffective waiver because "the district court failed to advise Cervantes-Cano that he had a right to

5

trial by jury, failed to verify that [he] understood that trying the case 'to the court' meant that a judge would determine his guilt, and failed to explain the nature and extent of the right to a jury trial." The *Cervantes-Cano* panel noted that "jury trial" and "trial to the court" are terms of art that even an informed lay person might not understand, let alone a person who does not speak English and is communicating through an interpreter. 2013 WL 1943060, at *4.

In *Harris*, the district court's exchange with the defendant was very minimal and did not even refer to the jury trial as a right. The district court judge said, "'The matter was set for a jury trial today. Yesterday the Court was advised that Mr. Harris has wished to *withdraw his request for a jury trial and try the matter to the bench*; is that correct?'" (Emphasis added.) Harris' attorney replied, "'Yes, your honor.'" The judge then asked Harris whether he still wished to withdraw his "'jury trial request'"; to which he replied, "'Yes.'" 2014 WL 6909612, at *1-2. On appeal, a panel of this court determined the waiver was ineffective because the record did not establish that the district court informed Harris that he had a right to a jury trial as opposed to a bench trial, citing *Cervantes-Cano*. 2014 WL 6909612, at *3-4.

Although there are some similarities between *Cervantes-Cano*, *Harris*, and the case at issue, there are also some notable differences as well. Here, the record makes it clear that the district court did refer to the "right to a jury trial," not merely a request. Johnson was also asked whether he understood that it would be a bench trial without a jury, but he expressed no confusion and did not ask for further clarification. There was also no indication in the record that Johnson had difficulty understanding English, unlike the defendant in *Cervantes-Cano*. Moreover, he had just had a jury trial in another case, so he had recent knowledge of what the right to a jury trial included. The district court also confirmed that Johnson had discussed the waiver with his attorney. The *Harris* court noted this as a significant difference between its facts and *State v. Clemons*, 273 Kan. 328, 340-41, 45 P.3d 384 (2002), in which the Kansas Supreme Court found the

6

defendant's jury waiver was valid. 2014 WL 6909612, at *4. In *Clemons*, the district court asked the defendant if it was his decision to waive his right to a jury trial, if he had spoken about the matter with his attorney, if he understood that he couldn't change his mind, and if anyone had threatened him or made any promises.

As was said in *Beaman*, "just the form of a waiver alone cannot be an appellate court's determinant. Full consideration of the facts and circumstances surrounding a defendant's waiver of his or her jury trial right is necessary in deciding whether a knowing and voluntary waiver occurred in any given case." 295 Kan. at 861. Though the colloquy between Johnson and the court was quite spare in this case, it covered all the essential requirements under our caselaw. We find that Johnson knowingly and voluntarily waived his right to a jury trial.

Johnson next argues that imprisoning someone for 46 months for the first violation of offender registration requirements categorically constitutes cruel and/or unusual punishment under the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. The State contends that this court does not have jurisdiction to review the claim because it is based on a presumptive grid sentence but even if the court had jurisdiction, the sentence is not cruel and/or unusual punishment.

As the State notes in its brief, this court has a duty to question jurisdiction on its own initiative, and if it determines there is no jurisdiction, then it must dismiss the claim. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008); *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013). In determining whether jurisdiction exists, this court's review is unlimited. *State v. Reed*, 302 Kan. 227, 233, 352 P.3d 530 (2015). Under K.S.A. 2015 Supp. 21-6820(c)(1) (formerly K.S.A. 21-4721[c][1]), appellate courts do not have jurisdiction to review any sentence that is within the presumptive sentence for the crime. See *State v. Sprung*, 294 Kan. 300, 317, 277 P.3d 1100 (2012). A presumptive sentence is "the sentence provided in a grid block for an

7

offender classified in that grid block" based on the crime severity ranking of his or her current crime of conviction and criminal history. K.S.A. 2015 Supp. 21-6803(q).

The first issue is whether Johnson received a presumptive sentence. Under K.S.A. 2015 Supp. 22-4903, the first violation of the offender registration requirements is a severity level 6, person felony. The district court found Johnson had a criminal history score of A. Forty-six months' imprisonment is the high sentence provided in the grid box for the severity level of the crime and applicable criminal history score. See K.S.A. 2015 Supp. 21-6804. Johnson was therefore sentenced to a presumptive sentence. Although Johnson submitted a reply brief, he did not address the jurisdictional issue raised by the State.

Despite Johnson's failure to address the issue, this court has a duty to consider jurisdictional issues. See *State v. Dull*, 302 Kan. 32, 38, 351 P.3d 641 (2015), *petition for cert.* filed September 4, 2015. In *State v. Huerta*, 291 Kan. 831, 247 P.3d 1043 (2011), the Kansas Supreme Court clarified that appellate courts may consider constitutional claims that challenge the statutory scheme for sentencing—that is a facial challenge to sentencing provisions which is not limited to the defendant's case alone—even when the defendant received a presumptive sentence. 291 Kan. at 839-40 (discussing *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 [2008]). The court then reiterated that appellate courts do not have jurisdiction to consider claims that merely challenge a defendant's individual presumptive sentence on constitutional grounds. 291 Kan. at 840. Although past cases have held that this court does not have jurisdiction to consider cruel and unusual punishment challenges to presumptive sentences on direct appeal, these cases all considered individual challenges to the defendant's sentence. See, *e.g.*, *Clemons*, 273 Kan. at 343-44; *State v. Blackshire*, 29 Kan. App. 2d 493, 499, 28 P.3d 440, *rev. denied* 272 Kan. 1420 (2001); *State v. Lewis*, 27 Kan. App. 2d 134, 140-41, 998 P.2d 1141, *rev. denied* 269 Kan. 938 (2000). Here, Johnson raises a facial or categorical challenge to the

8

sentencing scheme for first time violations of the offender registration requirements. Therefore, this court has jurisdiction to hear the claim.

The next hurdle that Johnson must overcome is that he failed to raise the issue at the district court. As stated above, a party cannot raise new issues, even constitutional ones, for the first time on appeal. *State v. Swint*, 302 Kan. 326, 335, 352 P.3d 1014 (2015). But there are several exceptions to the general rule. A constitutional issue may be asserted for the first time on appeal if: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or prevent the denial of fundamental rights; or (3) the district court was right for the wrong reason. 302 Kan. at 335 (citing *State v. Tague*, 296 Kan. 993, 1000, 298 P.3d 273 [2013]). Additionally, to comply with Kansas Supreme Court Rule 6.02(a)(5), the party must explain why the issue is properly before the court or the court may determine the party abandoned it by failure to brief. *Godfrey*, 301 Kan. at 1043-44. Johnson asserts that this court may review the issue because it involves a purely legal question arising on admitted facts. The Kansas Supreme Court has allowed categorical challenges to be raised for the first time on appeal under this exception. *State v. Williams*, 298 Kan. 1075, 1084-85, 319 P.3d 528 (2014); *State v. Ruggles*, 297 Kan. 675, Syl. ¶ 1, 304 P.3d 338 (2013). This court may review Johnson's claim.

The Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights prohibit cruel and/or unusual punishment. The United States Supreme Court in *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), stated that the Eighth Amendment not only prohibits inherently barbaric punishments but also punishments that are disproportionate to the crime: "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' [Citation omitted.]" The Kansas Supreme Court has recognized similar protections under Section 9

9

of the Kansas Constitution Bill of Rights. *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978).

Defendants who challenge their sentences as cruel and/or unusual can bring several different types of challenges. There are two types of proportionality challenges to sentences under the Eighth Amendment. In the first, known as a case-specific proportionality review, the defendant claims the length of the sentence is grossly disproportionate given all the circumstances of his or her particular case. *Graham*, 560 U.S. at 59-60; *Williams*, 298 Kan. at 1084. The second is a categorical challenge in which the defendant makes a general challenge to the use of a particular sentence to punish a specific category of offenders, asserting that the punishment of the sentence is inherently disproportionate to an entire class of offenders. *Graham*, 560 U.S. at 60-61; *Williams*, 298 Kan. at 1084. Challenges to sentences under Section 9 of the Kansas Constitution Bill of Rights are all analyzed under the three-factor test set out in *Freeman*. See, *e.g.*, *State v. Mossman*, 294 Kan. 901, 908-09, 281 P.3d 153 (2012).

Johnson brings only an Eighth Amendment categorical challenge under *Graham*. In doing so, Johnson waives his case-specific challenge under the Eighth Amendment. See *State v. Reed*, 300 Kan. 494, 505, 332 P.3d 172 (2014) (noting an issue not briefed is deemed waived). Additionally, although he cites Section 9 of the Kansas Constitution Bill of Rights, by failing to provide further argument or support, Johnson has also waived any claims under Section 9. See *Tague*, 296 Kan. at 1001; *State v. Gomez*, 290 Kan. 858, 866, 235 P.3d 1203 (2010). Moreover, this court could not consider either challenge on direct appeal anyway because both require the district court to have made factual findings and drawn conclusions of law. See *State v. Cervantes-Puentes*, 297 Kan. 560, Syl. ¶ 4, 303 P.3d 258 (2013). A categorical proportionality challenge under the Eighth Amendment implicates questions of law, and so this court exercises unlimited review. *Dull*, 302 Kan. at 40.

10

The United States Supreme Court has recognized three subcategories of categorical proportionality challenges: (1) those concerning the nature of the offense; (2) those concerning the characteristics of the offender; and (3) those that combine the first two. *Williams*, 298 Kan. at 1086. Johnson identifies his categorical challenge as "failing to comply with offender registration requirements, as a first-time offense." Johnson appears to fall into the first category, as he challenges the sentences based on the nature of the offense.

As a preliminary matter, this court must address the State's contention that Johnson's challenge is actually a case-specific challenge cloaked as a categorical challenge. Kansas courts have questioned and rejected categorical claims when the "categorization is so case-specific it seems to obliterate the distinction between" case-specific and categorical challenges. *Mossman*, 294 Kan. at 928; see *Cervantes-Puentes*, 297 Kan. at 566. In *Mossman*, for example, the Kansas Supreme Court rejected Mossman's proposed categorical challenge that included the age of the victim and characteristics of the crime and redefined the category as the offense committed by first-time offenders. 294 Kan. at 928-29.

Johnson slightly mischaracterizes his categorical challenge but not to the extent the State claims. He uses the term "first-time offense" and cites to *Mossman* and *State v. Reed*, 51 Kan. App. 2d 107, 341 P.3d 616 (2015), as authority that the court can consider whether it is a defendant's conviction for a first-time offense. *Mossman* and *Reed* however actually state that the court can consider the defendant's status as a first-time *offender*. *Mossman*, 294 Kan. at 928-29; *Reed*, 51 Kan. App. 2d at 110. Johnson is not a first-time offender and has an extensive criminal history, but this was his first violation of the offender registration requirements. Therefore, stated more clearly, the nature of the offense that applies to this analysis is the first violation of offender registration requirements.

11

There is a two-prong test used to evaluate a defendant's categorical challenge to a sentence. *Graham*, 560 U.S. at 60-61; *Dull*, 302 Kan. at 45; *Reed*, 51 Kan. App. 2d at 110. First, the reviewing court considers the "objective indicia of national consensus" by surveying the laws and practices in other states to determine whether there is a national consensus against the sentencing practice. *Graham*, 560 U.S. at 62. Second, the court conducts an independent review of the practice by considering "the culpability of the offenders at issue in light of their crimes and characteristics, . . . the severity of the punishment in question[,] . . . [and] whether the challenged sentencing practice serves legitimate penological goals." 560 U.S. at 67.

In analyzing this claim, the court first determines whether there is any national consensus against similar sentences for first violations of offender registration requirements. Although the specific rules may vary, all states have sex offender registration requirements. See FBI, *Sex Offender Registry Websites*, https://www.fbi.gov/scams-safety/registry. In Kansas, the first violation of offender registration requirements carries a prison sentence of 17 months to 46 months, depending on the defendant's criminal history, and 24 months' postrelease supervision. K.S.A. 2015 Supp. 22-4903(c)(1)(A); K.S.A. 2015 Supp. 21-6804; K.S.A. 2015 Supp. 22-3717(d)(1)(B). Johnson concedes that he cannot establish Kansas' sentencing practice is outside the national norms. Some states like Alaska and New Mexico provide lesser penalties than Kansas. Alaska Stat. § 11.56.840 (2014) (first registration violation is a misdemeanor); N.M. Stat. Ann. § 29-11A-4 (Mitchie 2013) and N.M. Stat. Ann. § 31-18-15 (Michie 2010) (failure to comply is fourth-degree felony punishable by 18 months' imprisonment). But several states have similar or steeper penalties than Kansas' sentences. See, *e.g.*, Ga. Code Ann. § 42-1-12(n) (2015 Supp.) (first violation is punishable by 1 to 30 years in prison); Ill. Comp. Stat. ch. 730 150/10 (2007) and Ill. Comp. Stat. ch. 730 5/5-4.5-40 (2015 Supp.) (first violation is a class 3 felony punishable by 2 to 5 years). Johnson has not established a national consensus against equivalent sentences for first-time violations of offender registration requirements. Nevertheless,

12

although the community consensus is important, it is not itself determinative of whether a punishment is cruel and/or unusual. *Graham*, 560 U.S. at 67.

The second prong of *Graham* requires the reviewing court to independently review the sentencing practice, considering the culpability of the offender and the nature of the offense and sentence. In regards to this, the Kansas Supreme Court has noted that the defendant must show that based on the characteristics of the class of offenders and the nature of the crime committed, the sentence is disproportionate with the offender's culpability. *Ruggles*, 297 Kan. at 684-85 (holding "hard 25" life sentence was not cruel and unusual punishment).

Johnson argues that because the registration requirements are burdensome and there are many opportunities for an individual to unintentionally violate them, the sentence is disproportionate to the offender's culpability. But, the requirements of lifetime postrelease supervision are also burdensome and that has been held constitutional for adult offenders. *Dull*, 302 Kan. at 53-56, 61 (detailing lifetime postrelease supervision requirements and holding it unconstitutional for juvenile offenders); *Williams*, 298 Kan. at 1089-90 (holding lifetime postrelease supervision constitutional for adult offenders). Johnson has also not proven that the class of offenders he belongs to is less culpable for their crimes than other adults. See *Ruggles*, 297 Kan. at 685 ("The law clearly presumes that people 18 years of age or older have reached a level of maturity that renders them fully culpable for the crimes they commit."). Moreover, the sentence at issue, 17 months to 46 months, is not severe when compared to other states' sentencing and it is graduated to reflect the defendant's criminal history.

In conducting this analysis, this court also considers whether the sentence furthers legitimate penological goals. Such legitimate goals include retribution, deterrence, incapacitation, and rehabilitation. *Graham*, 560 U.S. at 71-74. The United States Supreme Court and Kansas courts have held that the duty to register is a civil penalty

13

intended to protect the public, not to impose punishment. *Smith v. Doe*, 538 U.S. 84, 102-03, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); *State v. Myers*, 260 Kan. 669, 681, 695-96, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997); *State v. Simmons*, 50 Kan. App. 2d 448, 458, 329 P.3d 523 (2014), *petition for rev.* filed July 25, 2014. Without enforcement mechanisms like prison sentences, offenders would likely fail to comply with registration requirements and the public could be endangered. Thus, imprisonment for failure to register has a legitimate goal in advancing public safety by enforcing registration requirements. Moreover, the severity of the sentence is tied to how much of a risk the individual is to the public—those with extensive criminal history are sentenced to longer sentences while those with minimal criminal history are given lighter sentences. In accordance with the principles set out in *Graham*, the sentences serve a legitimate goal and are proportionate to that goal.

We hold that sentencing someone such as Johnson to 46 months' imprisonment for a first violation of offender registration requirements does not categorically constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Finally, we note there appears to be an error in the journal entry of judgment "Recap of Sentence" which lists the postrelease supervision term as 12 months instead of the 24 months pronounced at sentencing. This error requires correction. See *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012) (noting when journal entry imposes sentence that varies from sentence pronounced, it must be corrected to reflect actual sentence imposed). Accordingly, we remand this case with directions that a nunc pro tunc order be filed to correct the journal entry of sentence.

Affirmed and remanded with directions.